IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAEED KHAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. 2:11-cv-2957-KJN

<u>ORDER</u>

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from October 7, 1999, through the date of the final administrative decision.  (Dkt. No. 23.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (Dkt. No. 25.)  For the reasons that follow, plaintiff's motion for summary judgment

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge.  (Dkt. Nos. 6, 8.)

is denied, the Commissioner's cross-motion for summary judgment is granted, and judgment is entered for the Commissioner.

I.   BACKGROUND

Plaintiff was born in Pakistan on April 1, 1962, has a tenth-grade education, and previously worked as a forklift operator, line worker, warehouse worker, and mail carrier.[2] (Administrative Transcript ("AT") 273, 277, 380.)  On February 15, 2005, plaintiff applied for DIB and SSI, alleging that he was unable to work as of October 7, 1999.  (AT 262-66.)  On May 20, 2005, the Commissioner determined that plaintiff was not disabled.  (AT 225.)  Upon plaintiff's request for reconsideration, the determination was affirmed on November 29, 2005.  (AT 224.)  Subsequently, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 9, 2007.  (AT 374.)

In a decision dated June 11, 2007, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from October 7, 1999, through the date of that decision.  (AT 209-17.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 31, 2007.  (AT 206-08.)  Thereafter, plaintiff filed an action in federal district court to obtain judicial review of the Commissioner's final decision.  On October 3, 2008, the court approved the parties' stipulation for a voluntary remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  (AT 428-29.)

While proceedings related to plaintiff's February 15, 2005 application remained pending, plaintiff filed a subsequent claim for DIB and SSI on November 20, 2007.  This application was denied initially on January 28, 2008, and on reconsideration on August 15, 2008.
////

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

Plaintiff filed a request for hearing on August 28, 2008. Thereafter, plaintiff's remanded 2005 application and the 2007 application were consolidated. (AT 407.)

On remand, the ALJ held administrative hearings on October 15, 2009; January 21, 2010; and October 5, 2010. (AT 580-91, 592-99, 600-35.) At the second hearing on January 21, 2010, the ALJ ordered a psychological evaluation for plaintiff, and granted plaintiff's counsel's request for a Punjabi interpreter, which was provided at the third hearing on October 5, 2010. (AT 598.) In a decision dated December 14, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from October 7, 1999, through the date of that decision. (AT 403-22.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 31, 2011. (AT 396-98.) Thereafter, plaintiff filed this action in federal district court on November 4, 2011, to obtain judicial review of the Commissioner's final decision. (Dkt. No. 1.)

II.     ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ failed to properly credit plaintiff's testimony regarding his pain and functional limitations; and (2) whether the ALJ erroneously assessed plaintiff's English literacy and communication skills.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

    A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff remained insured for purposes of DIB through December 31, 2004. (AT 409.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 7, 1999. (Id.) At step two, the ALJ determined that plaintiff had the following

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2290-91 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

severe impairments: degenerative disc disease of the cervical spine with central stenosis; degenerative disc disease and bulging disc of the lumbosacral spine with radiculopathy; diabetes mellitus II; hypertension; and depression.  (AT 410.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 410-12.)  Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry, push/pull occasionally 20 pounds, frequently 10 pounds; can sit eight hours of an eight hour day with normal breaks; and can stand and walk six hours of an eight hour day with normal breaks.  However the claimant can do no climbing of ladders, ropes or scaffolds; can only occasionally do stooping, crouching, kneeling and crawling; has borderline intellectual functioning; can communicate in English and is literate in the English language functioning at better than the 6th-8th grade level (see forms he completed in A case); and has the following additional limitations:
> - Slightly limited ability to understand, remember and carry out short simple job instructions;
> - Moderately limited ability to understand, remember and carry out detailed job instructions;
> - No limitations on the ability to make judgments on simple work-related decisions;
> - Slightly limited ability to make judgments on detailed work-related decisions;
> - Slightly limited ability to interact appropriately with the supervisors, co-workers and the public;
> - Slightly limited ability to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting.

(AT 412.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (AT 419.)  Finally, at step five, the ALJ found that, upon consideration of plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy" that plaintiff could perform.  (AT 420.)  The ALJ

relied on the testimony of a vocational expert ("VE"), who testified that an individual with plaintiff's RFC could perform the following representative occupations: (1) Office Helper, light, unskilled, with 20,000 positions in California; (2) Mail Clerk, light, unskilled, with 8,000 positions in California; and (3) Furniture Rental Clerk, light, unskilled, with 5,000 positions in California. (Id.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from October 7, 1999, through the date of the decision. (AT 421.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

    a. Whether the ALJ failed to properly credit plaintiff's testimony regarding his pain and functional limitations

Plaintiff contends that the ALJ improperly discounted plaintiff's testimony concerning his symptoms and functional limitations. At the hearing, plaintiff testified to pain in his neck, lower back, and legs. (AT 619-20.) Plaintiff further testified that the pain in his neck was a "five to six number" without medication; he had intermittent swelling in his legs; the pain caused sleep disturbance; he experienced discomfort after 30 minutes of sitting, at which point he would need 10 minutes to walk; he estimated that he could lift 30 pounds "here and there" but could not carry a gallon of milk for a distance longer than from the store to the car; he was unable to drive longer distances; and he experienced difficulties when he moved his neck or kept it in a still position during periods of pain. (AT 619-24.)

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she

6

>need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
>Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of pain and functional limitations. Indeed, the ALJ acknowledged that plaintiff experienced chronic pain, and limited plaintiff to lifting 10 pounds frequently, lifting 20 pounds occasionally, and only occasional stooping, crouching, kneeling, and crawling. (AT 412.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding the degree of his symptoms and functional limitations, the ALJ provided several specific, clear, and

7

convincing reasons for doing so.  In particular, the ALJ found that plaintiff's allegations were inconsistent with: (1) the medical evidence and findings; (2) plaintiff's activities of daily living; and (3) plaintiff's relatively conservative treatment.  (AT 413.)  Each reason is addressed separately below.

<u>(1) Medical Evidence and Findings</u>

The ALJ discredited plaintiff's testimony in part because of the "lack of significant objective findings with minimal neurological or strength deficits . . . ."  (AT 413.)  "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005) (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991)).  Although lack of medical evidence cannot form the sole basis for discounting plaintiff's testimony regarding the degree of his symptoms, it is nevertheless a relevant factor for the ALJ to consider.  <u>Burch</u>, 400 F.3d at 681.

In particular, plaintiff's allegations of disabling symptoms and limitations were inconsistent with the opinions of three specialist consultative examiners who examined plaintiff for purposes of his physical impairments.  On November 27, 2001, plaintiff was examined by consulting examiner and neurologist Dr. Rebecca Jordan.  (AT 166-71.)  Dr. Jordan's examination revealed some tenderness in plaintiff's back, but otherwise a negative straight leg raising test, no muscle spasm, a full range of motion in all joints, normal muscle bulk, normal strength, and normal gait.  (AT 168-69.)  Based on her examination and observations, Dr. Jordan opined that plaintiff could stand, walk, or sit for six hours each in an eight hour day; lift or carry 25 pounds frequently and 50 pounds occasionally; and was limited to occasional bending, stooping, or crouching.  (AT 169-70.)

On May 9, 2005, plaintiff was examined by consultative examiner, Dr. Rajeswari Kumar, a diplomate of the American Board of Pain Medicine and the American Board of

Physical and Rehabilitative Medicine. (AT 340-45.) The examination revealed normal gait, a normal ability to toe and heel walk, and a negative straight leg raise test. (AT 342.) In addition, although plaintiff's lumbar spine was somewhat limited in range of motion, there was normal range of motion in his elbow, wrist, hand, hips, knees, and ankles. (AT 342-43.) Dr. Kumar found no atrophy of the arms and legs, normal muscle strength, and symmetrical reflexes. (AT 341-43.) As a result, Dr. Kumar opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit without limitation; and only occasionally bend and stoop. (AT 343.)

   Consultative examiner Dr. Brandee Waite, who was Board Certified in Physical Medicine and Rehabilitation, conducted an evaluation of plaintiff on January 6, 2008. (AT 485-88.) Dr. Waite found decreased range of motion in the lumbar spine and decreased sensation in the left foot, but otherwise normal range of motion in the joints, normal sensation, normal strength, and normal reflexes. (AT 486.) Plaintiff also exhibited some decreased toe to heel walking, which to Dr. Waite seemed "effort related." (AT 487.) Dr. Waite noted that "[d]espite his complaints of pain with many maneuvers, he did not exhibit any pain responses, such as flinching or grimacing, although he would stop the movements to report of pain." (AT 487.) Dr. Waite diagnosed plaintiff with myofascial pain, lumbar pain, and left flank and gluteal pain. (AT 487.) Based on this evaluation, Dr. Waite opined that plaintiff could stand and walk six hours in an eight hour workday; sit without restrictions, with appropriate breaks to change position; lift 10 pounds frequently and 20 pounds occasionally; and only occasionally bend, stoop, crouch, or twist. (AT 488.)

   In addition to discussing the opinions of the above-mentioned consultative examiners, the ALJ engaged in an extensive analysis of plaintiff's treatment records. Although plaintiff's treating physician, Dr. Razia Forte, who treated plaintiff between approximately 1999-2003, opined that plaintiff could not sit, stand, or walk for more than two hours in an eight hour day, the ALJ concluded that Dr. Forte's severe opinion was not substantiated by her clinical

findings, which "at most include paravertebral tenderness, a not significant positive straight leg raise and some muscle spasm." (AT 417.) The ALJ observed that Dr. Forte's notes frequently indicated a straight leg raise test within normal limits, a minimal decrease in range of motion, and normal strength and sensation, with medical imaging exhibiting at most mild or small abnormalities. (AT 106-65, 186-205, 417.)

Subsequent records from treatment by Dr. Narinder Sandhu from 2008-2009 revealed limited objective findings, and complaints of fatigue, pain, and depression. (AT 503, 507-09, 514-30.) Plaintiff's progress notes showed improvement in plaintiff's hypertension with the introduction and monitoring of medication. (508-09, 527-28.) A July 2008 MRI of plaintiff's lumbar spine indicated a marked loss of lumbar lordosis (i.e., a marked degree of straightening with some loss of lumbar lordotic curvature), but with preserved lumbar alignment, and an L5-S1 level disc bulge was noted to cause mild indentation of the thecal sac and slight displacement of exiting S1 nerve roots. (AT 534.) On August 23, 2008, an examination by neurologist Dr. Vladimir Rafinov revealed lumbar radiculopathy and decreased sensation in the distal limbs, but no atrophy, normal deep tendon reflexes, and no evidence of large-fiber sensory neuropathy. (AT 531.) A subsequent March 27, 2009 MRI of plaintiff's cervical spine showed only a small disc protrusion centered at the C4-5 and C5-6 levels, but no spinal stenosis, neural foraminal narrowing, or cord signal abnormalities. (AT 541.)

With respect to plaintiff's mental impairments, plaintiff was evaluated by consultative examining psychologist, Dr. Travis Owens, on March 17, 2010, at the ALJ's request. (AT 574-78, 598.) After conducting a psychological evaluation and administering intelligence, memory, and other psychological testing, Dr. Owens provisionally diagnosed plaintiff with borderline intellectual functioning. (AT 578.) Dr. Owens opined that plaintiff's ability to handle simple instructions was mildly impaired, and his ability handle complex instructions was moderately impaired; plaintiff's ability to respond appropriately to others was mildly impaired; plaintiff's ability to respond appropriately to usual work situations (attendance

and safety) was unimpaired; plaintiff's ability to deal with changes in a routine work setting was mildly impaired; plaintiff's ability to maintain attention and concentration was mildly impaired; and plaintiff's ability to maintain persistence and pace was unimpaired. (AT 578.) The ALJ gave substantial weight to Dr. Owens's findings and substantially incorporated these findings into plaintiff's RFC. (AT 412.)

In sum, although the medical evidence and findings substantiate that plaintiff experienced some degree of chronic pain and had mental limitations, the assessments of specialists Dr. Waite, Dr. Kumar, Dr. Jordan, and Dr. Owens, which occurred over a span of several years, as well as the weight of the treatment records, provide a proper basis to discount plaintiff's allegations of severe disabling limitations.

### (2) Activities of Daily Living

Substantial evidence also supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. (AT 417.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting...Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Despite allegations of severely limiting symptoms and pain, plaintiff testified that he was able to play with and lift his 35-pound child. (AT 417, 603, 623.) The ALJ also noted that, despite plaintiff's complaints of severe neck pain, he continued to drive, "a function that includes much turning of the neck." (AT 417, 616.) In 2001, plaintiff indicated that he was able to engage in activities such as walking, shopping, light housekeeping, driving, and socializing. (AT 79.) In 2010, plaintiff reported that he had weekly visits with family members and tried to attend his mosque daily. (AT 575.) Plaintiff also reported daily activities such as taking care of his son, working in the yard with his wife, assisting his wife with all the household chores, shopping, and managing his finances. (Id.)

To be sure, the record also contains some evidence suggesting that plaintiff's activities are more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

### (3) Conservative Treatment

The ALJ further discounted plaintiff's testimony based on plaintiff's ordinary and routine treatment. (AT 417, 419.) Conservative treatment is a proper consideration when evaluating credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning

that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

However, plaintiff argues that the lack of more aggressive treatment in this case should not be held against him for purposes of a credibility assessment, because "plaintiff did not have insurance for most of the period in question and when he did secure insurance it was limited and did not pay for medications." (Dkt. No. 23 at 23:19-20.) Indeed, failure to obtain treatment due to lack of insurance or funding cannot support an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); see also SSR 96-7p, at ** 7-8. To the extent that the ALJ discounted plaintiff's testimony based on his failure to obtain treatment he could not afford, that was error. Nevertheless, any such error was harmless, because, for the reasons discussed above, the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

Moreover, there is evidence in the record that plaintiff was prescribed conservative treatment for reasons other than his finances. For example, the ALJ noted that, although plaintiff was presented with the option of surgery by neurosurgeon Dr. Pasquale Montesano in January 2002, plaintiff did "not perceive that his pain [was] really that bad to warrant surgery." (AT 182, 415.) Dr. Montesano agreed that foregoing surgery would be an "appropriate decision" and noted that plaintiff was neurovascularly intact. (AT 182.) In lieu of surgery, Dr. Montesano recommended that plaintiff "join a health club and get involved in a daily, low impact aerobic exercise program utilizing a stair master, cross trainer, and treadmill." (Id.) Such a conservative treatment plan, ostensibly recommended for reasons other than insufficient finances, is inconsistent with a finding of permanent total disability. See Bracket v.

13

Comm'r of Soc. Sec., 468 Fed. App'x. 754, 754 (9th Cir. 2012) (unpublished).

### (4) Conclusion

In sum, the court finds that the ALJ provided several specific, clear, and convincing reasons for partially discounting plaintiff's credibility.

    b.    <u>Whether the ALJ erroneously assessed plaintiff's English literacy and communication skills</u>

Plaintiff further contends that the ALJ erred by concluding that plaintiff is literate and able to communicate in English with at least a sixth to eighth grade level, and therefore improperly relied on the vocational expert's testimony regarding jobs that required up to a sixth to eighth grade English language level. (AT 628.) The Commissioner is responsible for establishing plaintiff's literacy in English. Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000). The court finds that the ALJ's determination regarding plaintiff's English literacy and communication skills is supported by substantial evidence in the record.

The ALJ gave several specific reasons for his determination regarding plaintiff's literacy and communication skills. First, plaintiff completed State Agency forms in his own handwriting and indicated on multiple forms that he is able to speak and understand English. (AT 78-88, 96, 272.) Second, plaintiff attended multiple medical consultations and examinations without the use of an interpreter, and was able to articulate his complaints. (AT 166-70, 340-44, 419, 444-48, 485-88.) Third, plaintiff testified in English at several administrative hearings, including hearings before the ALJ who authored the decision under review. (AT 376-88, 391-95, 419, 581, 586, 588-89, 591, 594, 597-99.) Finally, Field Office personnel who interviewed plaintiff also noted his ability to communicate in English. (AT 75.) See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (ALJ did not err in considering personal observations of claimant in the credibility analysis); SSR 96-7p, at *5 ("[t]he adjudicator must also consider any observations about the individual recorded by Social Security Administration employees during interviews, whether in person or by telephone ... the adjudicator may also

14

consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements"). At the final hearing, the ALJ clarified that a Punjabi interpreter was present, not because he found plaintiff unable to communicate in English, but because testifying in Punjabi might make plaintiff more comfortable. (AT 603-05.)

In sum, the ALJ reasonably determined, based on substantial evidence in the record as a whole, that plaintiff was literate and could communicate in English at a sixth to eighth grade level.[4] While plaintiff points to other portions of the record, which may lead to the opposite conclusion, the ALJ is charged with resolving ambiguities and here, substantial evidence supports the ALJ's determination. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) ("'We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'") (quoting Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).

V.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 23) is DENIED.
2. The Commissioner's cross-motion for summary judgment (Dkt. No. 25) is GRANTED.
3. Judgment is entered for the Commissioner.
4. The Clerk of Court is directed to close this case and vacate all dates.

---

[4] Contrary to plaintiff's argument, the VE testified that the representative occupations selected by the ALJ at step five would require language levels equivalent to the fourth to sixth grade, and not Language Levels 4-6 of the Dictionary of Occupational Titles ("DOT"), which require more advanced language skills. (AT 631-32.) Indeed, the representative occupations of office helper, mail clerk, and furniture rental clerk are all classified as Language Level 2 in the DOT. See 1991 WL 672232 (office helper - level 2); 1991 WL 671813 (mail clerk - level 2); 1991 WL 672589 (furniture rental consultant - level 2). As the Commissioner points out, this is the same language level as plaintiff's past work as a line worker and order puller, and one language level lower than his past relevant work as a mail carrier. (AT 626-27.) See 1991 WL 684568 (electronic component processor - level 2); 1991 WL 672111 (order filler - level 2); 1991 WL 672158 (mail carrier - level 3).

IT IS SO ORDERED.

DATED: February 20, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE